(Decided April 1st, 1897).

---

# CHARLES C. McCOLGAN *vs.* THE BALTIMORE BELT RAILROAD COMPANY.

*Executions—Property of Quasi-Public Corporation not Liable to Levy—Destruction of Common Fund by One Creditor—Injunction Against Execution.*

No execution can be levied upon the property of a railroad company, which is essential for the performance of its corporate duties, unless such levy be authorized by statute.

Plaintiff was a judgment creditor of the defendant, a railroad company, all of whose property was mortgaged to secure a loan. An execution on the judgment was levied upon land on which the railway tracks were laid. Defendant applied for an injunction to restrain the sale. *Held,* that the injunction should be granted, not only because the property of a quasi-public corporation, essential to the performance of its duties to the public, is not subject to sale

upon execution, in the absence of statutory authority, but also because one creditor will not be allowed to destroy a fund or property to which other creditors have a right to look for payment.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.), enjoining the appellant from proceeding to levy upon or sell the property of the appellee, mentioned in the bill of complaint.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD and RUSSUM, JJ.

*James McColgan,* for the appellant.

*W. Irvine Cross,* for the appellee.

FOWLER, J., delivered the opinion of the Court.

The appellant, Charles C. McColgan, recovered a judgment against the Baltimore Belt Railroad Company in the Superior Court of Baltimore City for $3,543.75, which was affirmed by this Court.   It is admitted that the judgment is valid and subsisting and that no part of it has been paid or otherwise discharged.   The appellant procured an execution to issue from this Court to the sheriff of Baltimore City to sell for the payment of said judgment the lands and tenements of the appellee company, consisting of twenty-four lots of ground, with the improvements thereon, in the city of Baltimore, which, it is admitted, form part of the right of way of the appellee and upon which it has laid its tracks, and which therefore constitute an essential part of its railroad and are necessary to its operation.   The appellee's property is mortgaged for a loan of six millions of dollars, and a sale of the lots levied on would prevent it from earning money to pay this and other debts.   The Circuit Court of Baltimore City, upon a bill filed by the railroad company, passed a decree enjoining the judgment creditor from selling the lots in question in satisfaction of his judgment—and hence this appeal.

The contention of the appellant is that he may, without

showing any special or general legislative authority other than the right which any judgment creditor has to sell the property of a debtor, levy upon and sell the corporate property of a railroad company, which is essential to the performance of its corporate duties. And although this proposition is in direct conflict with the views of this Court as announced in *State* v. *Consolidation Company*, 46 Md. 1, and *Brady* v. *Johnson*, 75 Md. 449, and against the weight of authority, we are asked to adopt it and reverse the decree appealed from which is based upon and in entire accord with the cases just cited. In *Brady's case, supra*, we held that it is clear upon well settled principles that an execution will not lie against property such as the property here levied upon is admitted to be. And in the valuable notes to this case, as reported in 20 L. R. A. 737, a number of authorities sustaining our view are collected. The learned authors of *Elliott on Railroads*, the most recent and one of the most valuable works on the subject, cite *Brady's case*, and a long list of authorities, including the Supreme Court of the United States and the highest Courts of Indiana, Tennessee, Massachusetts, Ohio, Pennsylvania, California, Illinois and Nebraska in support of the proposition that "The franchise of a railroad company and corporate property essential to the enjoyment of the franchise, are not subject to sale on execution, unless the Legislature authorizes or assents to the transfer." 2 *Elliott on Railroads*, section 520. But in addition to this, all of the corporate property being mortgaged, the injunction was properly issued upon the authority of the case of *Gue* v. *Tidewater Canal Company*, 24 How. 257, cited in *Brady's case*, in which TANEY, C. J., said, delivering the opinion of the Court: "It would be against the principles of equity to allow a single creditor to destroy a fund to which other creditors had a right to look for payment, and equally against the principles of equity to permit him to destroy the value of the property of the stockholders by dissevering from the franchise property which was essential to its useful existence."

The rule we have adopted in *Brady's case*, and which, as we have seen, is almost universally recognized, does not rest upon any corporate immunity, nor was it adopted to afford any peculiar protection to corporations generally. This doctrine is applicable only to quasi-public corporations, and since the State has charged them with a duty towards the public, it is against its policy to allow such corporations to be so crippled that the duty cannot be performed.    In the case of the *Plymouth Railroad Company* v. *Colwell & Jacoby*, 39 Pa. St. 337, JUDGE WOODWARD thus states the doctrine : "As to land which has been appropriated to corporate objects, and is necessary for the full enjoyment and exercise of any franchise of the company, whether acquired by purchase or by exercise of the delegated power of eminent domain, the company hold it entirely exempt from levy and sale ; and this on no ground of prerogative or corporate immunity, for the company can no more alien or transfer such land by their own act than can a creditor by legal process ; but the exemption rests on the public interests involved in the corporation.    Though the corporation in respect to its capital is private, yet it was created to accomplish objects in which the public have a direct interest, and its authority to hold lands was conferred that these objects might be worked out ; they shall not be balked, therefore, by either the act of the company itself or its creditors."

The appellant fails to cite any authorities to sustain his position, and the only argument or suggestion he makes to support it is drawn from the alleged right under the general laws of this State of every judgment creditor in every case to have his judgment satisfied by execution, and from the provisions of the 19th Article of the Bill of Rights which guarantees to every man a remedy for any injury done his person or property.    But it is too late seriously to consider a proposition, the adoption of which involves a departure from well settled rules of law, a reversal of our own well considered decisions, and the placing of ourselves in conflict with a long line of authorities, including the Supreme

Court of the United States and the highest tribunals of many of the States of the Union.

*Decree affirmed.*

(Decided April 1st, 1897).